# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2098
_____

United States of America,  *
                            *
    Appellee,               *
                            *
    v.                      *
                            *
Augustin Lopez-Rodriguez,   *
                            *
    Appellant.              *


_____

No. 04-2149                     Appeals from the United States
_____             District Court for the
                                Southern District of Iowa.

United States of America,  *
                            *
    Appellee,               *
                            *
    v.                      *
                            *
Janice Marie Bagley,        *
                            *
    Appellant.              *


_____

Submitted: November 16, 2004
Filed: February 3, 2005 (corrected February 4, 2005)
_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following the district court's[1] denial of their joint motion to suppress evidence, Augustin Lopez-Rodriguez conditionally pleaded guilty to Possessing with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) (2000), and Janice Marie Bagley conditionally pleaded guilty to Maintaining a Drug House in violation of 21 U.S.C. § 856 (2000). Lopez received a 120-month sentence, and Bagley received a 30-month sentence. They appeal the denial of their motion to suppress, and we affirm.

I.

Narcotics detectives obtained records of a call placed to 2050 King Avenue, Apartment #24, Des Moines, Iowa, from a cellular telephone that the detectives recovered following the arrest of two individuals for drug-related activity. Special Agents Ken Ardhuser and Pat Waymire of the Iowa Department of Public Safety, Division of Narcotics, and Detective Curtis Pote of the Ankeny Police Department went to the King Avenue address. Upon arriving about 4:20 p.m., Agent Ardhuser knocked on the apartment door, identifying himself as a police officer and announcing that he was following up on a drug investigation. After several moments, Bagley opened the door. The testimony at the suppression hearing is contradicted as to whether the officers asked permission to enter the apartment or whether Ardhuser stepped inside the door without asking permission, but in any event, the officers entered the apartment. The district court found that Bagley did not verbally invite the officers into the apartment.

_____

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

Once inside, the officers explained to Bagley and Lopez that they had received "complaints" of drug activity related to the apartment. Bagley admitted that there was marijuana in the apartment. Ardhuser asked to see it, and Bagley verbally agreed to a search of the apartment. Lopez showed Ardhuser to the bedroom where the marijuana was located along with a small chunk of methamphetamine. Ardhuser discovered a large amount of methamphetamine under a bag in a trash can in the bedroom. Ardhuser immediately returned to the kitchen and informed Bagley and Lopez of their Miranda rights. One of the officers obtained a consent-to-search form from his car, and within ten minutes from when the officers first knocked on the door, both defendants had signed a consent to search the apartment and Bagley's car.

The defendants moved to suppress the methamphetamine and statements made by them on the basis that there was no search warrant and no valid consent given to search the apartment. The district court denied the motion, and both defendants conditionally pleaded guilty. Lopez and Bagley each appeal the denial of the motion to suppress.

II.

Appellants argue that the officers violated their Fourth Amendment rights to be free from unreasonable searches because the officers entered the apartment without the appellants' consent, and the officers searched the apartment without their voluntary consent. The district court found that Bagley at least implicitly granted the officers permission to enter the apartment. It also found that both appellants verbally consented to the officers' search of the apartment once inside. Whether consent is voluntarily given is a fact-finding that we review for clear error. See United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003), cert. denied, 124 S. Ct. 1525 (2004).

The Fourth Amendment (applicable to state actors by way of the Fourteenth Amendment) protects individuals from unreasonable searches of their homes. Law

enforcement officers generally must obtain a warrant, supported by probable cause, before they can search an individual's home. Neither a warrant nor probable cause is needed, however, when the individual voluntarily consents to the search. See id. The government must establish, by a preponderance of the evidence, that the consent to the search was legally sufficient before the fruits of the search may be admitted into evidence. See id.; United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir.), petition for cert. denied, __ U.S.L.W. __ (U.S. July 28, 2004) (No. 04-5708). Because the Fourth Amendment protects against unreasonable searches, a search is not unconstitutional as long as the officers reasonably believed that consent was voluntarily given. See Cedano-Medina, 366 F.3d at 684. "In other words, a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent." Id. at 684-85.

The appellants make much of the fact that Agent Ardhuser testified that his normal procedure is to attempt to step inside the home once the door is opened without requesting permission, if the occupant allows it. (See Suppression Tr. at 20.) Although Agent Ardhuser testified that he did not request permission from Bagley to enter the apartment when she opened the door, he did testify that Bagley "opened the door and invited us in." (Id. at 16.) Agent Waymire testified that Bagley agreed to let them in after they identified themselves and asked if they could talk with her. (Id. at 51.) Bagley was twice asked at the suppression hearing whether she gave the officers permission to enter the apartment, and both times she responded vaguely that she opened the door and the officers came in. (Id. at 78.) She never refuted the officers' testimony that she invited them in, nor did she testify that she asked them to leave or stop their search. An occupant can grant permission for officers to enter a home by his or her actions. See Cedano-Medina, 366 F.3d at 686 (finding officer's belief that consent was given to be reasonable where defendant opened the door to his truck, stood back along the side of the road while the officer searched the truck, and never attempted to stop the search, despite an apparent language barrier during

the officer's attempt to obtain oral consent to the search). Given the divergence of the testimony, and the district court's superior perspective in analyzing the credibility of the witnesses, we cannot say that the district court clearly erred in determining that the officers reasonably believed that Bagley gave them permission to enter the apartment. See id. at 687 (affirming denial of suppression motion and noting that while the appellate court may have had concerns with the evidence if it were reviewing the case in the first instance, the district court's conclusion was not clearly erroneous); United States v. Boyd, 180 F.3d 967, 978 (8th Cir. 1999) (officers reasonably believed that they had permission to enter a home when the person who answered the door pointed up the stairs and stated that the defendant was "up in his room").

Once inside, the officers asked Bagley if it was okay to search the apartment, to which she responded "yes." (Suppression Tr. at 80, 86.) Agent Waymire testified that both Bagley and Lopez consented to the officers' request to search the apartment. (Id. at 42.) Prior to the officers beginning their search, Bagley offered the information that there was marijuana in the apartment, and Lopez led Agent Ardhuser to the bedroom to show him the drugs. Contrary to appellants' contentions on appeal that Bagley was intimidated by the officers and felt she had no choice but to consent to a search, Bagley testified at the suppression hearing that the officers were in plain clothes, she never saw any guns, and the officers were not threatening. (Id. at 87-88, 92.) Regardless of Bagley's unvoiced, subjective feelings about whether she could decline the officers' request to search the apartment, the evidence establishes that the officers reasonably believed that Bagley and Lopez voluntarily consented to the search of the apartment. The district court did not clearly err in determining that the officers searched the apartment pursuant to a valid consent.

III.

We affirm each of the district court's judgments.

_____

-5-